Gould *v.* Wood (et al., Appellant).

Argued November 14, 1962.   Before RHODES, P. J.,
ERVIN, WRIGHT, WATKINS, MONTGOMERY, and FLOOD,
JJ. (WOODSIDE, J., absent).

*Charles F. McKenna,* with him *E. S. Lawhorne,* Associate Counsel, *R. D. Holahan,* Counsel, State Workmen's Insurance Fund, *Alan Miles Ruben,* Deputy Attorney General, and *David Stahl,* Attorney General, for appellant.

*James G. Callas,* with him *Callas and Millard,* for appellee.

OPINION BY FLOOD, J., December 12, 1962:

In this workmen's compensation case, following the board's refusal of compensation to the claimant and its denial of his petition for rehearing, the court below referred the case back to the board with directions to afford the claimant a full and complete rehearing.

The record discloses that the claimant was employed by the defendant as a tool dresser on a gas well rig and sustained injuries in the course of his employment on March 19, 1957, when he was thrown from the rig by an explosion of the gas well. Thereafter, on June 8, 1957, he sustained further injuries when he was attempting to lift the "leg of the mast" on the rig.

The referee found that the claimant had suffered from a diaphragmatic hernia since 1952 and that the

two accidental injuries in 1957 aggravated this condition, causing him to become totally disabled from June 8, 1957. The board affirmed the finding as to the existence of the hernia since 1952, but found the medical testimony insufficient to sustain a finding that the accidents caused the disability and found the disability to be due to the pre-existing degenerative conditions and not the accidents. The petition for rehearing, as amended, contained an affidavit of Dr. Regis A. Wolff, an internal specialist, that he first treated the claimant in April 1959, that x-ray examination disclosed no evidence of hiatus hernia, and that a gastric ulcer was found "but the major cause of this man's distress was diagnosed as post traumatic exhaustion." The board denied a rehearing on the ground that the affidavit failed to support the claimant's allegation that Dr. Wolff attributed the claimant's condition to the accident of March 19, 1957.

The court below, in referring the case back for rehearing noted that the medical testimony was confused and confusing, that the doctors should have been asked definitely whether, in their professional opinion, the hiatus hernia had any connection with either of the accidents, that Dr. Kent, who also treated the claimant was not called, that there was no evidence whatever that the defendant was suffering from a hiatus hernia in 1952, but that the only evidence concerning this is hearsay and to the contrary, and that in view of this erroneous finding which is the very basis of the board's conclusion, it is obvious that there should be a rehearing upon the matter.

No appeal was taken from the original order of the board denying compensation. The later order refusing rehearing was within the board's discretion and is reversible only for an abuse of discretion: *Conti v. Butler Consolidated Coal Company*, 169 Pa. Superior Ct. 276, 82 A. 2d 528 (1951). The appellant

contends that there was no abuse of discretion by the board, and that the case is on all fours with *Lopen v. Economy Coat, Apron, Towel and Linen Supply Company*, 163 Pa. Superior Ct. 593, 63 A. 2d 109 (1949). In that case the testimony of the claimant's vascular specialist, who was the consulting physician best qualified to express an opinion concerning causation, fell short of the required standard of definiteness. After the board had reversed an award by the referee on the ground that a causal connection had not been established, the claimant petitioned for a rehearing on the ground that a referring physician and the claimant's surgeon would testify that the accidental injury caused the condition complained of. The referring physician had seen the claimant only once and neither he nor the surgeon were vascular specialists. The board's refusal to grant a rehearing was affirmed in that case because "the additional testimony . . . would tend to contradict expert opinion of higher authority already adduced in the claimant's behalf and . . . this would merely confuse the issue."

An examination of the testimony here shows a very different situation. The confused, partially conflicting and incomplete testimony of the medical witnesses, neither of whom were internists, is sought to be supplemented by the testimony of an internal specialist, whose affidavit indicates his opinion of a different and traumatic causation of the claimant's disability. In addition, there is no testimony to support the board's finding of a long-standing degenerative condition, which the board found to be the cause of the claimant's disability.

At the hearing before the referee there was evidence that prior to these accidents the claimant's health was good, he was a good worker, and he made no complaints about any disability, while on the other hand, he has been wholly disabled from performing his usual duties

since the date of the second accident. He testified that the explosion threw him "[c]lean out of the rig", a distance of about twenty feet, over a pile of blocks onto his chest. It knocked him out for a little while. He and his fellow worker were treated in the emergency room of a hospital and "just laughed it off, thought it was kind of comic getting out alive". A fellow worker testified that the claimant was "kind of stunned" and in a "state of shock" after the explosion; that he was treated by Dr. Thompson at the hospital and discharged the same day and that he complained about his chest hurting below the heart after the explosion.

The claimant testified that his lower chest bothered him after the explosion and he worked only irregularly until June 8, 1957. On that date, while attempting to lift the "leg of the mast" on the rig, something "[j]ust snapped" and he suffered pain across the middle of the body.

Dr. Sedwick, the defendant's medical witness, who was called out of turn as the first witness, testified that the claimant first came to his office complaining of back pain on June 10, 1957; that he concluded the back injury was probably secondary to aggravation of an old compression fracture of T-11 which had previously been treated and that on June 14, 1957, when his back was improved but he still had pain, Dr. Sedwick discharged him to "the referring physician", Dr. Blobner. He saw the claimant a third time on October 7, 1957, when he first advised him of the explosion of March 19, 1957, and complained that he had a tight feeling in the chest, could not eat well and had been vomiting on and off since the second injury. An "upper G.I. series stomach x-ray" was taken on September 30, 1957, which in its essential features demonstrated a small hiatus hernia of the stomach, with evidence of ulceration in the hernia. "Conse-

quently, diagnosis of hiatus hernia of the stomach was made because of the previous recent illness. Conservative treatment of the condition was decided upon and the patient was again referred to Dr. Blobner . . ." .

When asked whether or not there was any connection between the accident of March 19, 1957 and the hiatus hernia, Dr. Sedwick testified: "There are so many factors involved in interpreting cause and effect in hiatus hernia. I would be unable to say that any one of these two accidents actually caused hernia. However, had there been pre-existing weakness or had there been a small defect, it is not inconceivable that intra-thoracic pressure resulting from either accident might aggravate perhaps a pre-existing condition." He further testified that the claimant had no history of pre-existing condition; that hiatus hernia is primarily a degenerative condition, not caused by trauma, and that he could not relate any of the claimant's disability to the accident of March 19, 1957. Finally, he testified that the vast majority of hiatus hernia cases, particularly small ones, respond to conservative treatment within several weeks, so that pain and constant symptoms would not be expected to persist for much longer than six weeks.

The claimant's medical witness, Dr. Blobner, who also was called out of turn, prior to the claimant and his lay witness, testified that he saw the claimant on June 12, 1957, when he complained of chest pains. His first impression was that the claimant may have had a minor coronary occlusion, but an electrocardiogram which he ordered was essentially negative and Dr. Blobner referred the claimant back to Dr. Sedwick, "whom the claimant said he was being treated by." He saw the claimant off and on for several months for his chest complaints. After the x-ray report of a small hiatus hernia of the stomach had been received, Dr. Blobner again saw the claimant for chest pains on

October 14, 1957. On this visit he reviewed the history with the claimant who then stated he had suffered pain in the chest off and on since the accident in March and that the pain was aggravated somewhat by the lifting injury in June. Dr. Blobner could not recall for sure whether the claimant previously had given a history of being in an accident in an explosion. Dr. Sedwick advised him by telephone that there was no mention made of "the accident" in his office records and that in January of 1952 the claimant had a negative upper G.I. series. Dr. Blobner put the claimant on conservative management for diaphragmatic hernia, saw him every two or three weeks and was still treating or observing him for that condition on the date of the referee's hearing, May 28, 1958, and testified that his condition had become worse since he saw him in June 1957. When asked whether there was any possible cure for this condition, he answered: "Yes, by surgery."

As to causation, Dr. Blobner's direct testimony was as follows: "Q. What, in your professional opinion, caused this hiatus hernia which we speak of here? A. Possibly a degenerative lesion aggravated by some sort of trauma. Q. Could this trauma be described as that similar to that spoken of here, a blast that knocked him off his feet? A. Yes. Q. It is your opinion that this is what caused this, after reviewing the history of the case and how he described the symptoms to you and when he became nauseated and the pain? Is that what caused this? A. It is my opinion that it is possible that this hernia could have arisen as a result of trauma received in that explosion, or lifting several days prior to the day I saw him on June 12. It is also my opinion that if I am going to combine the history of the patient with this accident, that we could relate it to the trauma received in the explosion of March, 1957." There was no attempt thereafter to clarify the last statement.

On cross-examination Dr. Blobner testified as follows: "Q. But it is in October that he said he had been in this explosion? A. Yes, October 14. That is when I began to clear it up. I was in a fog there. When I first saw him in June I thought he had symptoms of coronary occlusion, which of course in the diaphragmatic hernia the symptoms are alike. My prime concern was to exclude coronary occlusion because that was the important thing at that time. It could have caused harm. Once it was out of the way, I referred back to Dr. Sedwick, who had treated him before I saw him. Q. And this hiatus hernia, that is a degenerative condition, is it not? A. Usually, yes, but it can be aggravated by trauma . . . Q. Doctor, did you indicate in that report [of January 14] that this man had a diaphragmatic hernia that manifested itself sometime between 1951 and 1957? A. Yes. Q. Did you mean in that report that this condition appeared sometime between those dates, or that it was a degenerative condition taking place between those dates, those periods? A. The hernia might itself manifest sometime between those dates. That letter is not exactly correct. I learned later it wasn't January of 1951 but January of 1952. I haven't seen that x-ray taken in January of 1952. The only knowledge I have is a telephone conversation with Dr. Sedwick. He stated that in 1952 he had a negative GI series."

It will be seen from this review of the testimony that the findings by the referee and the board that the claimant suffered from a diaphragmatic hernia since January 1952 were wholly unsupported by the record, except for the hearsay testimony of Dr. Blobner as to the x-rays which is contradictory to Dr. Sedwick's tesmony. Moreover, the findings themselves are contrary to Dr. Sedwick's testimony that the claimant had no history of a pre-existing condition.

In our opinion the record amply supports the conclusion of the court below that the board abused its discretion in denying the claimant's petition for rehearing. While the claimant's condition is conceivably unrelated to the accidental injuries which he sustained in the course of his employment, his previous good health and subsequent total disability suggest a connection which called for a full and complete medical inquiry before compensation was denied.

If the record had disclosed that a full and satisfactory medical inquiry had already been made, there would, of course, have been no need to reopen the matter for further medical testimony. But, as pointed out by the court below, the medical testimony here "is not only confused but confusing". That this confusion affected the board's decision is most apparent from its finding, without any evidence in the record to sustain it, that the claimant suffered from a diaphragmatic hernia since 1952.

Dr. Sedwick, a general surgeon, and Dr. Blobner, a general practitioner, obviously were handicapped by the claimant's failure initially to mention or fully explain the injuries which he sustained in the explosion of March 19th, concerning which his attitude appears to have been casual, to say the least. Neither physician was clear as to which of them was the attending physician. Each spoke of the other as the referring physician. Each of them apparently relied upon the x-ray report of another physician for the diagnosis of hiatus hernia. Dr. Blobner obviously misunderstood or misinterpreted the information he received from Dr. Sedwick concerning the 1951 or 1952 x-rays, and he also appeared to be in some doubt as to the propriety, under the rules of evidence, of taking into consideration the claimant's history relating to the explosion in giving his professional opinion as to causation and no further effort was made to elicit his opinion as to causation in the

light of the history. The witnesses were called out of turn, the defendant's doctor first, the claimant's doctor next, and then the claimant and his lay witness. This may well have hampered the claimant's counsel with respect to posing hypothetical questions to the physicians incorporating the lay testimony concerning the explosion as well as the later accident and its effect on the claimant. Although Dr. Sedwick indicated that the pain and symptoms of hiatus hernia should not persist for much longer than six weeks, the claimant's condition became steadily worse. While Dr. Blobner, on the other hand, indicated that the cure for the condition was surgery, Dr. Wolff's affidavit indicates that the claimant presently does not suffer from hiatus hernia, although no surgery has been performed.

Under the testimony and the findings the issue has been confused and the claimant seeks to present additional testimony from an internal specialist, whose authority might well be considered to be higher than that of the general surgeon and general practitioner who previously testified. While Dr. Wolff does not connect the claimant's condition with the accident in any great detail in his affidavit, we think it sufficiently discloses an opinion that the claimant's condition is connected with injuries he received in the explosion.

Since the claimant did not consult Dr. Wolff until after the hearing, he cannot be said to have lacked due diligence in failing to produce Dr. Wolff's testimony earlier. In this and other respects the case resembles *Gaffey v. John J. Felin Company*, 162 Pa. Superior Ct. 222, 57 A. 2d 432 (1948), where we held that the board had abused its discretion in refusing the claimant a rehearing.

Order affirmed.